# AFFIDAVIT IN SUPPORT OF A
# SEARCH WARRANT APPLICATION

I, Stephanie L. Rattigan, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—two electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and am currently assigned to the FBI Boston Division - Portland, Maine Resident Agency, Southern Maine Gang Task Force. I have been a Special Agent since January 2017. Prior to becoming a Special Agent, I had two prior roles in the FBI; one as a Staff Operations Specialist from 2014 to 2017 and one as an Operational Support Technician from 2011 to 2014. I have been trained in various aspects of law enforcement, to include specialized training in evidence collection as a member of the FBI's Evidence Response Team. I have investigated various types of crimes in the States of New Jersey and Maine, to include violent crime, fugitives, criminal enterprises, narcotics, violent crimes against children, missing persons, counterintelligence, crimes aboard aircrafts, and crimes on the high seas. I have attended specialized training by the FBI in Basic Cellular Analysis, and have attended the NYPD Special Victims Investigators Course by the NYPD Special Victims Unit. I have participated in the execution of numerous warrants authorizing the search of residences and the search and seizure of computers, computer equipment, software, and electronically stored information. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

3. The items of property to be searched are:

    a. One black Samsung Galaxy A10e mobile telephone, IMEI 35627110398972;

    b. One white and black Xbox One X gaming console, serial number 022769192517.

(collectively, "the Devices"). The Devices are currently located at the FBI Portland Resident Agency in Portland, Maine.

4. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

5. Between January 16, 2020 and March 16, 2020, an FBI Online Covert Employee (OCE) with the FBI's Child Exploitation Task Force in Midland, Texas was connected to the internet in an online undercover capacity from a cell phone located in Midland, Texas. A software program was used to record the online activity, chats, and images identified within Kik, a mobile messaging application. Kik, also known as Kik Messenger, is a free mobile application that permits users to send messages and other content, including images and videos. The OCE was invited to a Kik chat group frequented by individuals with a sexual interest in children. The Kik group was titled "Toddlers," and users routinely posted and viewed images and videos of child sexual abuse material involving toddlers and babies.

6. On February 20, 2020, the username "yug78" was seen within the chatroom. "yug78" was a member of the "Toddlers" chatroom and on the above-mentioned date, posted two videos and several group messages.

7. The first video showed a seven to ten-year-old female, nude from the waist down, manipulating her vagina. The video was 1 minute and 28 seconds in length.

8. The second video showed a six to nine-year-old female performing oral sex on an approximate 30-45-year-old male. The video had several still shots contained in it, where the female was in a sexual position. The video continued to show the male conducting anal sex on the female. The video ended with the female masturbating the male's penis before the male forced his penis inside the female's mouth. The male's face was never visible in in the video. The video was 1 minute and 39 seconds in length.

9. FBI sent a subpoena to Kik requesting subscriber data for the "yug78" account. The following is information that Kik provided in response to the subpoena:

|  |  |
|---|---|
| First Name: | Bigolo |
| Last Name: | M |
| Email: | holyelswordyt@gmail.com |
| Registration Timestamp: | January 4, 2020 |

10. Kik also provided numerous IP addresses that had been used to log into the yug78 account. After a review of the IP addresses, a subpoena was sent to Charter Communications for the IP address 172.101.27.193, a recent IP address used to log into the account. According to Kik, this IP address was utilized numerous times to access the "Toddlers" chat group.

11. Charter Communications provided the following information regarding the subscriber whose account was associated with the above IP address at the relevant time:

|  |  |
|---|---|
| Customer Name : | [Female Adult #1] |
| Account Address : | 116 Walnut Street, Apartment #2, Lewiston, ME 04240[1] |
| Phone Number : | 207-891-3676 |

---

[1] I have not included the true name of Female Adult #1 in this affidavit because Female Adult #1 is not suspected of criminal activity and I believe it is therefore appropriate to protect her privacy. I also have not included the exact address where Female Adult #1 and her minor children resided to protect their privacy.

12. In September 2020, Boston Division sent Google a subpoena concerning the email address holyelswordyt@gmail.com. This email address was created on April 24, 2019, and was last used in September 2020. According to the subpoena return from Google, this email account was logged-in using the IP address 172.101.27.193 on January 15, 2020; June 12, 19, and 25, 2020; July 30, 2020; and September 16, 2020.

13. A review of open-source information confirmed that Female Adult #1 was residing at the address that had been provided by Charter Communications. Lewiston Police Department records likewise confirmed that Female Adult #1 resided at the above-listed address.

14. On February 8, 2021, FBI Special Agent Daniel Grimes and Task Force Officer Nicholas Wiers went to 116 Walnut Street, #2 in Lewiston. They met with Female Adult #1, who agreed to speak with them. She said she resided at the apartment with her two minor sons, J.G. and R.G. She said they had moved into the apartment in about 2014.

15. When asked about the email address holyelswordyt@gmail.com, Female Adult #1 said it probably belonged to her son J.G., who had a date of birth in November 2003.

16. With Female Adult #1's permission, investigators then spoke with J.G. He said he was a junior at Lewiston High School but had not gone to school for several weeks due to remote learning.

17. J.G. said he had met an adult male on Xbox Live when he was approximately 13 or 14 years old. The male eventually told J.G. to download an encrypted messaging application, Discord. J.G. said he began talking with the male about sex, eventually receiving Hentai images from him. J.G. identified Hentai as Japanese pornographic images.

18. J.G. said over the course of several months, he began to talk to more adult males on Discord, eventually opening accounts with Kik and Wickr (another encrypted messaging

4

application). Over the course of those months, J.G. began receiving "Luly Hentai," which he described as Hentai with underaged children.

19. J.G. said one male asked him if he wanted to see actual child pornographic images, to which he agreed. J.G. said he began receiving images and videos of "some really young kids getting really messed up, you know, getting fucked." J.G. said he had three or four videos on his phone that he had recently deleted, but that he had not viewed child pornography in at least two months.

20. Based on what J.G. had told them about what was likely to be found on his cell phone and Xbox gaming device, agents decided to seize both devices. Once he was advised that his cell phone was going to be seized, J.G. said, "You're going to find a lot more on there than a few videos then." J.G. stated that he had been distributing and trading child pornography for several years, and that it had turned into an addiction, escalating after he started receiving child pornography.

21. J.G.'s cell phone and Xbox console (referred to above as the Devices) were seized and transported to FBI Task Force Officer Maurice Drouin, who is also a Deputy Sheriff with the Androscoggin County Sheriff's Office, at 2 Turner Street in Auburn. Drouin has received specialized training in the forensic examination of electronic devices. The Devices remained in Drouin's custody at the Sheriff's Office after he received them following their seizure. The Devices were transferred to the FBI's Portland office in December 2022.

22. The Devices are currently in the lawful possession of the FBI. In addition, the FBI is seeking to examine the Devices to obtain information about individuals who were in communication with J.G. when he was a minor, not to gather incriminating information about J.G. Those individuals would not have a Fourth Amendment interest in information found on the

Devices. Therefore, the FBI may well already have all necessary authority to examine the Devices. Nevertheless, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws.

23. The Devices are currently in storage at the FBI's Portland office. In my training and experience, and from my conversations with TFO Drouin, I know that the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the FBI.

## TECHNICAL TERMS

24. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. **Wireless telephone**: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones

may also include global positioning system ("GPS") technology for determining the location of the device.

      b.    **Digital camera**: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

      c.    **Portable media player**: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

      d.    **Video game console**: A game console is a standalone computing device whose primary function is to permit the playing of electronic games. A game console is typically designed to provide output to an external display such as a computer monitor or television. Consoles typically include a central processing unit, system memory and a graphic processing unit, and may also contain hard drives or other internal storage options, as well as optical drives.

Modern game consoles also often have the ability to connect to the internet via either a wired or wireless connection.

25. Based on my training, experience, and research, I know that the Samsung Galaxy A10e mobile telephone seized from J.G. has capabilities that allow it to serve as a wireless telephone, digital camera and portable media player. The Xbox One X game console seized from J.G. has capabilities that allow it to serve as a video game console. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

27. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

    f.  I know that when an individual uses an electronic device to send or receive child pornography via the internet, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the

electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

28. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

29. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

30. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*Stephanie L. Rattigan*
Stephanie L. Rattigan
Special Agent, FBI

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date: Mar 13 2023

City and state: Portland, Maine

_____
Judge's signature

Karen Frink Wolf, U.S. Magistrate Judge
Printed name and title

11